IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, L.L.C., | § | |
| as Broadcast Licensee of the July 30, 2011 | § | |
| Strikeforce: Emelianenko/Henderson Fight Program, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:14-cv-00687 |
| | § | |
| (1) RICHARD DAVILA, Individually and d/b/a | § | |
| DIVINE LINE TATTOO; and | § | |
| (2) DOUGLAS BILLIAN, Individually and d/b/a | § | |
| DIVINE LINE TATTOO, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT & BRIEF IN SUPPORT

Plaintiff G&G Closed Circuit Events, L.L.C. ("Plaintiff") files *Plaintiff's Motion for Final Default Judgment & Brief in Support*.

### A. STATEMENT OF THE ISSUES

Issue #1:    Whether Defendants violated the Federal Communications Act of 1934 for the unauthorized interception and broadcast of the closed-circuit telecast of the July 30, 2011 Strikeforce: Fedor Emelianenko v. Dan Henderson Fight Program, including undercard or preliminary bouts, under 47 U.S.C. § 605.

Issue #2:    Whether Plaintiff is entitled to receive statutory damages and the amount of statutory damages to be awarded to Plaintiff against Defendants pursuant to 47 U.S.C. § 605.

Issue #3:    Whether Plaintiff is entitled to receive additional damages and the amount of additional damages to be awarded to Plaintiff against Defendants for willfulness pursuant to 47 U.S.C. § 605.

Issue #4:    Whether Plaintiff is entitled to recover its attorneys' fees and the amount of attorneys' fees to be awarded to Plaintiff against Defendant, pursuant to 47 U.S.C. § 605.

B.  FACTUAL BACKGROUND

This is an "Anti-Piracy" case involving the Federal Communications Act of 1934, as amended (the "Communications Act").  The Communications Act combats against the piracy of radio and television signals.  *See* 47 U.S.C. §§ 553 and 605.  In this case, Defendants 1) Richard Davila, Individually and d/b/a Divine Line Tattoo ("Davila"); and 2) Douglas Billian, Individually and d/b/a Divine Line Tattoo ("Billian") (collectively "Defendants") illegally intercepted the closed-circuit telecast of the July 30, 2011 Strikeforce: Fedor Emelianenko v. Dan Henderson Fight Program (the "Event") and exhibited the Event in Defendants' Establishment, Divine Line Tattoo, located at 310 Valley Hi Drive, Suite 203, San Antonio, Texas 78227 (the "Establishment"), without Plaintiff's authorization and without paying the licensing fee to Plaintiff.

On July 30, 2014, Plaintiff filed Plaintiff's Original Complaint against Defendants. See [Doc. 1]. On October 6, 2014, Defendant Billian was served with the *Summons in a Civil Action*; *Plaintiff's Original Complaint*; and *Disclosure Statement and Certificate of Interested Persons*. See [Doc. 6]. On October 7, 2014, Defendant Davila was served with the *Summons in a Civil Action*; *Plaintiff's Original Complaint*; and *Disclosure Statement and Certificate of Interested Persons*.  *See id.*  To date Defendants have not filed an answer or any other responsive pleading with the Court.  Plaintiff now requests a final default judgment against Defendants in this motion for final default judgment.

C.  ARGUMENTS & AUTHORITIES

1.    The unauthorized interception and broadcast of either cable or satellite transmissions violates either 47 U.S.C. §§ 553 or 605.[1]  Accordingly, all acts of unlawful interception, receipt and broadcast of the signal of the Event by Defendants were in violation of the Federal Communications

---

[1] *See, e.g., J&J Sports Prods. v. Evolution Entm't Group, LLC,* 2014 U.S. Dist. LEXIS 99446, *4-5 (E.D. La. July 21, 2014) ("... § 605(a) governs interception of radio transmissions but not cable, and § 553(a) governs interception of cable transmissions but not radio...").

Act.  *See Entm't by J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002) (Gilmore, J.) ("The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services.  Thus, Congress enacted a variety of penalties and remedies to 'protect the revenue of television cable companies from unauthorized reception of their transmissions.'").

      2.      As Defendants owned, operated, and managed the Establishment on the night of the Event, Defendants could not have obtained the transmission of the Event had Defendants not undertaken specific wrongful actions to intercept and/or receive and broadcast the telecast.  *See Affidavit of Thomas P. Riley* (Exhibit "A") at ¶¶ 6, 9-10; *see also Plaintiff's Original Complaint* [Doc. 1], ¶¶ 2-3.[2]  In order for an unauthorized commercial establishment to receive a broadcast, such as the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the establishment, or moving an unauthorized decoder or satellite card from its authorized location to the establishment.  *See* Exhibit "A" at ¶ 10; *see, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (explaining that in order to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service or improperly relocate an authorized decoder.  "In any of these scenarios, the illegality of the action would have been apparent to the perpetrator").

---

[2]  By Defendants' default, the well pleaded allegations of facts in the *Complaint* are considered admitted and taken as true.  *See e.g.*, *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability."); *J&J Sports Prods. v. El Pescador Mexican Seafood, Inc*., 2010 U.S. Dist. LEXIS 127940 at * 4 (E.D. Tex. Oct. 27, 2010) (Mazzant, J.) ("Defendants are deemed to have admitted by default all the factual allegations in Plaintiff's Complaint. Fed. R. Civ. P. 8(b)(6)."); *EMI April Music, Inc. v. Jet Rumeurs, Inc*., 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008) (Lynn, J.) ("By virtue of their default, Defendants have admitted that the factual allegations in the Complaint are true."); *J&J Sports Prods. v. Halftime Bar Group, LLC*, 2012 U.S. Dist. LEXIS 166450, at *2 (N.D. Tex. Oct. 17, 2012) ("Where, as here, Defendants have defaulted, the factual allegations of the Complaint are taken as true.").

3.      The transmission of the Event originated via satellite.  *See* Exhibit "A" at ¶ 6.

Accordingly, Plaintiff moves for judgment under 47 U.S.C. § 605.  To establish liability under § 605,

Plaintiff, as exclusive licensee, need only show that the Event was shown in Defendants'

Establishment without authorization from Plaintiff.  *See J&J Sports Prods. v. Little Napoli, Inc.*, 2014

U.S. Dist. LEXIS 99032 at *5 (S.D. Tex. July 22, 2014) (Miller, J.).  Plaintiff possessed the

proprietary rights to exhibit and sublicense the Event.  *See* Exhibit "A" at ¶ 4; Exhibit "A-1".

Through a licensing agreement with the promoter of the Event, Plaintiff was licensed to exhibit the

Event at closed circuit commercial locations throughout Texas.  *See id.*  Thus, the Event was legally

available to commercial establishments in Texas only through an agreement with Plaintiff.  *See*

Exhibit "A" at ¶ 5; Exhibit "A-1".

4.      On the date of the Event, without authorization from Plaintiff, Defendants intercepted

and received or assisted in the interception and receipt of the transmission of the Event, and broadcast

or assisted in the broadcast of the Event to the patrons of Defendants' Establishment.  *See* Exhibit

"A" at ¶ 8; Exhibit "A-2".  On the night of the Event, Plaintiff's Auditor entered Defendants'

Establishment and observed the Event being exhibited on four (4) televisions, including two (2) big-

screen televisions, to the customers inside the Establishment.  *See* Exhibit "A-2".

### STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)

5.      Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled

for the violation shall be not less than $1,000.00 and not more than $10,000.00.  For the reasons set

forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against

Defendants in the amount of $10,000.00 for Defendants' violation of the Communications Act.

6.      As stated *supra* and supported by the affidavits attached hereto, on the date of the

Event, Defendants intercepted and received or assisted in the interception and receipt of the live telecast of the Event. Defendants then broadcast or assisted in the broadcast of the Event to the patrons at Defendants' Establishment for viewing therein.  Defendants broadcasted the Event to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff.

7.      In the instant case, as more fully discussed *infra*, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of Defendants' unlawful actions.  Accordingly, Plaintiff elects to receive statutory damages.  In the instant case, the lost income from the sale of the Event to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled for the Defendants' wrongful acts.[3]

8.      In addition to the lost revenue which would have been derived from the delivery and exhibition of the Event to Defendants' Establishment and its patrons, Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities and goodwill." *See Am. Television & Commc'ns Corp. v. Floken, Ltd.,* 629 F. Supp. 1462, 1466 (M.D. Fla. 1986).

9.      The *Affidavit of Thomas P. Riley* details the types of damages suffered by Plaintiff. For example: (1) the loss of customers; and (2) the loss of revenue. *See* Exhibit "A" the *Affidavit of*

---

[3] *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute.  There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.") (internal citations omitted); Order at 5, *J&J Sports Prods., Inc. v. Papagallos I, Inc.*, No. 1:08-cv-00691-SS (W.D. Tex. Apr. 17, 2009) (Sparks, J.) ("It would be difficult for the Plaintiff to prove its actual damages. The lost licensing fee would only represent a starting point for determining the Plaintiff's actual damages."); *Comcast Cable Commc'ns. v. Cabrera*, No. 04-cv-3431, 2005 U.S. Dist. LEXIS 36421, at *4 (D.N.J. Dec. 27, 2005) ("In setting the amount of statutory damages . . . the Court considers as a starting point the value of the programming services to which Defendant had access without having to pay the applicable fees.").

*Thomas P. Riley* at ¶¶ 11-13.  But for Defendants' unauthorized broadcast of the Events, all or some of the patrons of Defendants' Establishment would have become paying patrons and directly increased the fees paid to Plaintiff by its authorized commercial establishments.  *See id.* at ¶ 11.

10.     When negotiating sublicense fees, Plaintiff generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming.  *See* Exhibit "A" at ¶ 14.  Therefore, when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such as the Event, Plaintiff's reputation and goodwill suffers from what appears like a misrepresentation.  *See id.* Plaintiff is operating a legitimate business of the type that Congress specifically sought to protect.[4]

11.     Given the benefits that Defendants received from the broadcast of the Event and given the additional damages which Plaintiff has suffered, it is fair and reasonable to assess against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00 for Defendants' violation of the Communications Act by the exhibition of the Event.

DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

12.     Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(c)(ii) because Defendants' actions were willful and "for purposes of direct or indirect commercial advantage or private financial gain."  In *ON/TV of Chi. v. Julien*, the Court of Appeals for the Seventh Circuit interpreted willful under the Statute as "disregard for the governing statute and an indifference to its requirements."  763 F.2d 839, 844 (7th Cir. 1985) (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

13.     By Defendants' default, Defendants have admitted an intentional exhibition of the

---

[4]  *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 773 ("Congress enacted the Cable Communications Policy Act of 1984 to address 'a problem which is increasingly plaguing the cable industry – the theft of a cable service.'")

Event for financial gain.[5]  Additionally, because of the absence of any way in which Defendants could have "innocently" accessed the broadcast of the Event, it is apparent that Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for Defendants' commercial advantage.[6]  Defendants knew that it was wrong to receive, intercept and divert the signal of the Event and to broadcast it in Defendants' Establishment.  *Jasper Grocery*, 152 F. Supp. 2d at 442; *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain.  Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

14.     In the instant case, Defendants' actual knowledge that Defendants' acts were wrongful should be sufficient to demonstrate that Defendants' acts were willful.  *See KingVision Pay-Per-View, Ltd. v. Valles*, No. EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. Mar. 30, 2001) (Briones, J.) ("While Defendant may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendant that such interception could not be had for free.").

---

(citing *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001), *cert. denied*, 122 S.Ct. 1127 (2002)).

[5]  *See J&J Sports Prods., Inc. v. Guzman*, No. CV-F-08-0091, 2008 U.S. Dist. LEXIS 51916, at *13 (E.D. Cal. July 1, 2008) ("By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage.").

[6]  *See Joe Hand Promotions, Inc. v. Malespin*, No. 99 Civ. 8942, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program.  Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing any one of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.").

15.     Regarding the second prong of the damages test under 47 U.S.C. § 605(e)(3)(C)(ii), it is patently obvious that Defendants' actions were "for the purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii); *see also* Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News, '84 Bd. Vol.-8, 4745, 4750 ("[i]t is further intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly by both the courts in deciding actions.  Those who willfully violate subsection (a) and directly or indirectly enjoy commercial gain from those violations, may be reached.").

16.     Defendants' purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial advantage by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights, while avoiding proper payment to Plaintiff. Courts determining willfulness damages have considered the following factors, such as here, where Defendants:

- Broadcast the Event on multiple televisions:  *See Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *19-20 (S.D. Tex. 2014) (Harmon, J.) ("…courts have considered such factors as the number of televisions on which defendants broadcast the Event…"); *see also* Exhibit "A-2."

- Broadcast the Event on a big-screen television:  *See J&J Sports Prods. v. Lopez*, 2011 U.S. Dist. LEXIS 4814 (S.D. Tex. Jan. 18, 2011) (Rosenthal, J.) (finding a willful violation and awarding additional damages based on factors including defendant's exhibition of the boxing match on a big-screen television); *see also* Exhibit "A-2".

- Showed the Event in an urban area:  *See Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *20 (S.D. Tex. 2014) (Harmon, J.) ("…courts have considered such factors as … whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact…"); *see also* Exhibit "A-2."

17.     As a willful violator of the Communications Act, Defendants must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. Otherwise, other commercial establishments "would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market."  *See Fallici v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983).

Thus, in the instant case, the award of additional damages must be sufficiently significant to deter Defendants and other unauthorized commercial establishments from stealing protected Communications.

18.     Therefore, in addition to the reasons set forth *supra*, the minimum amount of $50,000.00 (or five (5) times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff pursuant to Section 605(e)(3)(C)(ii).  *See Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 U.S. Dist. LEXIS 104979 (S.D. Tex. July 27, 2012) (Hoyt, J.), *aff'd* 544 Fed. Appx. 444 (5th Cir. Tex. 2013) ("Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts."); *J&J Sports Prods. v. Rivera*, 2014 U.S. Dist. LEXIS 95853 *11 (S.D. Tex. July 14, 2014) (Harmon, J.) ("Regarding additional damages for willful violations, the case law reviewed by this court suggests that a multiplier of three to eight times the statutory damages is appropriate.").

<u>ATTORNEYS' FEES</u>

19.     Plaintiff requests an award of attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) and as provided in the *Affidavit of David M. Diaz*.  Pursuant to Section 605(e)(3)(B)(iii), the award of attorney's fees is mandatory.  Pursuant to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."  *See* the *Affidavit of David M. Diaz* (Exhibit "B").[7]

---

[7]  Courts have recognized that a one-third contingent fee is reasonable for the prosecution of anti-piracy cases.  *See* the *Memorandum Opinion and Order* in *Entm't by J&J, Inc. v. Nuno*, Civil Action No. 3:01-CV-0631-H, 2001 U.S. Dist. LEXIS 11050, at *2 (N.D. Tex. August 1, 2001) (Sanders, J.); *Entm't by J&J, Inc. v. David Cantu, Individually and d/b/a R&R Sports Club*, No. 3:01-CV-1803-R, (N.D. Tex. Dec., 10, 2002) (Buchmeyer, J.) (*Final Judgment*) f.n.2 ("The Court takes judicial notice that an award of attorney's fees in the amount of one-third (1/3) of the damages awarded herein is reasonable and necessary for this type of action.").  In addition, such an award prevents the request for attorney's fees from becoming an unduly complicated matter for the Court.  *See Nisby v. Comm'rs Court of Jefferson*, 798 F.2d 134, 137-38 (5th Cir. 1986) (Hinojosa, J., concurring) ("In a system burdened with increased caseloads, it is inappropriate and unnecessary to make a request for attorney's fees unduly

CONCLUSION & PRAYER

For the reasons set forth herein, Plaintiff respectfully requests the Court sign and enter

judgment for Plaintiff against Defendants, jointly and severally, awarding Plaintiff:

(1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from
        Defendants, jointly and severally, in the amount of $10,000.00;

(2)     Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants,
        jointly and severally, in the amount of $50,000.00;

(3)     A permanent injunction that enjoins Defendants from ever intercepting or
        exhibiting an unauthorized program in violation of the Federal
        Communications Act;

(4)     Costs and post-judgment interest at the highest lawful rate; and

(5)     Such other and further relief to which Plaintiff is entitled.

---

complex matter.  The attorney's fees issue should not become a second complicated lawsuit.  To determine the
amount of an attorney's fee award, district courts should be given standards which are fair, simple and easily
reviewable on appeal for abuse of discretion").

Respectfully submitted,

By: s/ _____

      David M. Diaz
      Attorney-in-charge
      State Bar No. 24012528
      ddiaz@kbdtexas.com
      Andrew R. Korn
      Of counsel
      State Bar No. 11683150
      akorn@kbdtexas.com

THE KORN DIAZ FIRM
4221 Avondale Avenue
Dallas, Texas 75219
(214) 521-8800 – Telephone
(214) 521-8821 – Telecopy

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of December, 2014, I have mailed by United States

Postal Service a copy of this document to the following non-CM/ECF participant:

| | |
|---|---|
| Richard Davila | VIA U.S. MAIL AND U.S. CERTIFIED MAIL |
| 3700 Beech Street | RRR# 7013 2250 0002 3524 8802 |
| San Antonio, TX 78226 | |
| | |
| Douglas Billian | VIA U.S. MAIL AND U.S. CERTIFIED MAIL |
| 2210 Gail Drive | RRR# 7013 2250 0002 3524 8819 |
| Copperas Cove, TX 75622 | |

DEFENDANTS

By: s/ _____

      David M. Diaz